655 So.2d 765 (1995)
Dorothy M. Williams and Andre WILLIAMS, etc.
v.
Joseph A. LEMAIRE, et al.
No. 94-CA-1465.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1995.
*766 Joseph V. DiRosa, Jr., New Orleans, for plaintiffs-appellants.
Michael R. Allweiss, Max J. Cohen, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and ARMSTRONG and MURRAY, JJ.
MURRAY, Judge.
Mr. and Mrs. Williams appeal the trial court's grant of summary judgment in favor of Employers Reinsurance Corporation (ERC), dismissing their claim against it because its insured had not notified ERC of the claim within the policy period.
The Williams complain that there is a genuine issue as to whether a claim was made against Cavalier Insurance Agency (ERC's insured) during the policy period. They also contend that, if it is determined that a claim was made against the insured during the policy period, they should not be denied their right of action against the insurer based on the facts of this case. We agree.
On August 29, 1989, Mrs. Williams was involved in an automobile accident while driving a car owned by her husband. She filed suit against the other driver, his insurer, and Aetna, her uninsured motorist carrier. Aetna filed a motion for summary judgment asserting that it had no policy in effect covering Mrs. Williams' car on the date of the accident. After discovery in which plaintiff sought records pertaining to a specific policy, Aetna supplemented its summary judgment motion to allege that it had issued a policy, but that policy had lapsed for non-payment of premiums[1]. On September 3, 1991, the Williams supplemented their original petition to assert a claim against Cavalier, their insurance agent, and XYZ Insurance Company for alleged negligence in connection with the lapse of their uninsured motorist coverage with Aetna. Cavalier was not served with the original and supplementing petition until January 20, 1992, four months after the ERC policy had expired. On March 26, 1993, the Williams, having learned the identity of Cavalier's errors and omissions carrier, substituted ERC for XYZ Insurance Company.
The policy issued by ERC to Cavalier was in effect from September 15, 1985 to September 15, 1991. It provided coverage to Cavalier for:
SECTION I
COVERAGE.... any negligent act, error or omission of Insured or any person for whose acts the Insured is legally liable, arising out of the conduct of the business *767 of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker ... as respects claims first made against the Insured during the policy period.
(Emphasis added)
The policy defined what was a "claims first made" for purposes of the policy:

SECTION V
DEFINITIONS. Wherever used in this policy:
(c) the term "claims first made" shall mean that the insured has received notice of legal process, that a demand for money or services has been made against the Insured or that the Insured has become aware of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the Insured.
(Emphasis added)
The policy also provided that the Insured shall give prompt notice to ERC of any claim or proceeding, event or development which in the judgment of the Insured might result in a claim against the Insured. Finally, the ERC policy provided that "no action shall lie against [ERC] unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy ..."
It is undisputed that Cavalier did not notify ERC of the suit filed against it nor otherwise put ERC on notice of any proceeding, event or development with regard to Cavalier's relationship with the Williams that could result in the institution of a claim against it in the future. It is also undisputed that the Williams themselves did not notify ERC of their claim against Cavalier during the policy period.[2]
Although Cavalier was not served with the suit against it until after the ERC policy expired[3], the Williams allege that they had several discussions with Cavalier's agent, and informed him, during the policy period, that they intended to institute an action against Cavalier. These allegations are disputed by ERC. There exists, therefore, a genuine issue as to whether a claim was first made against Cavalier during the term of the ERC policy. However, that is not dispositive of this appeal.
Since the policy unambiguously required that ERC be notified of the potential claim by its insured during the policy period, the threshold question to be addressed by this Court on appeal is whether a "claims made policy", that conditions coverage upon notice by the insured to the insurer, is enforceable against a third party who is unaware of the insurer's identity or the policy condition.
ERC relies on Livingston Parish School Bd. v. Fireman's Fund, 282 So.2d 478 (La. 1973) to support its position that a policy limitation that requires notice to the insurer is not per se impermissible and a policy that limits coverage to "claims made" is not against public policy. Livingston indeed does support appellee's argument as between the insured and the insurer, the two contracting parties. However, Livingston did not involve the claim of a third party tort victim, and Justice Tate, writing for the Court, recognized that "claims made" policies could be against public policy in some other situations. See, Id. at 481 n. 4. We, therefore, must consider if this is one of those other situations.
The Williams argue that their claim against ERC is brought under the Direct Action Statute, La.Rev.Stat. 22:655 (West 1988). They argue further that under the Direct Action Statute they are vested with *768 rights at the time of the tort and those rights cannot be taken away because of the insured's failure to notify the insurera condition over which they, the injured parties, had no control. West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950) supports this argument. In West plaintiffs' minor daughter had been killed by a truck owned by Monroe Bakery. The Second Circuit reversed a judgment for plaintiffs against the bakery and its insurer in solido, and entered judgment in favor of the bakery's insurer. The Supreme Court reversed, holding that the insurer could not escape liability under the policy because the insured had failed to give notice to the insurer as required by the policy. In so doing, the Court found that the Direct Action Statute gives to the injured party an immediate right of action directly against the insurer of the party responsible for the injuries, and expresses the public policy of Louisiana that a liability insurance policy is not issued primarily for the protection of the insured but for the protection of the public. Id. 46 So.2d at 129, 130, citing Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351, 357 (1942).
The West Court adopted the reasoning of our predecessor Court in Edwards v. Fidelity & Casualty Co. of New York, 11 La.App. 176, 123 So. 162, 163 (1929):
It is quite evident that, except in very rare cases, the party injured by the negligence of another has no knowledge as to whether or not that other is insured, and if he has ordinarily no knowledge as to whether there is insurance at all, then, clearly, he has no knowledge as to who the insurer may be if there is one. It is therefore not within his power to give the notice required by the policy, and, if notice is essential to his recovery, his right must, as we have stated, depend upon the other party. We do not think such was the intention of the legislators.

(Emphasis added).
West 46 So.2d at 126, quoting from Edwards v. Fidelity & Casualty Co., 11 La.App. 176, 123 So. 162 (Orleans 1929).[4]
ERC points out, quite correctly, that the Direct Action Statute affords "a right of direct action against the insurer within the terms and limits of the policy." It argues that since the notification requirement was clear and unambiguous any right of direct action by the Williams against it is subject to that limitation. This argument was considered and rejected by the Court in Edwards, which opined that:
... the words "terms and limits of the policy" were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions of the policy with which it was within the power of the plaintiff to comply.
Id. 123 So. at 163.
The principles expressed in West, Davies, and Edwards apply with equal force to the case at bar.[5] Here the alleged tortious conduct occurred, and the Williams allegedly put Cavalier, the insured, on notice that a claim would be made, all within the policy period. The injured parties did not know if Cavalier was insured for its alleged negligence. They certainly did not know the insurer's identity. It was not within their power to give notice to ERC as required by the policy, and the enforcement of such a policy provision deprives them of their right of action under R.S. 22:655.
We find that the portion of the ERC policy conditioning coverage upon notice to it *769 of the claim during the policy period is unenforceable against the Williams under the facts of this case.[6]
The evidence submitted in connection with the summary judgment motion establishes that there is a genuine issue of material fact as to whether Cavalier became aware, during the policy period, of events or developments that could result in the institution of a claim against it in the future. If the jury resolves that issue in favor of the Williams, there would have been a "claim first made" during the policy period as that term is defined in the policy. For this reason, we reverse the summary judgment in favor of ERC.
REVERSED AND REMANDED.
SCHOTT, Chief Judge, concurring in the result:
The majority opinion indicates that there would be no coverage under ERC's policy if it could prove that its insured Cavalier did not become aware during the policy period of plaintiffs' claim against Cavalier. As I understand the West, Davies, and Edwards cases cited and discussed in the majority opinion plaintiffs had a right of action against ERC under the Direct Action Statute which as a matter of public policy vested in plaintiffs at the time of the tort and could not be taken away from them because of lack of notice to ERC during the policy period whether ERC's insured, Cavalier, was aware of the claim during the policy period or not.
Consequently, the trial court erred in granting ERC's motion for summary judgment not because Cavalier's knowledge was a genuine issue of material fact, but because under the Direct Action Statute, plaintiffs may proceed against ERC even if Cavalier was aware of plaintiffs' claim during the policy period and failed to notify ERC.
NOTES
[1] The Williams allege that there was considerable delay in their obtaining this information and determining that they did not have uninsured motorist coverage for this accident as they thought. As a result, they were delayed in learning of Cavalier's alleged negligence. The record supports this allegation. The hearing on Aetna's motion was continued at least once to allow additional time for Aetna to research its files concerning the plaintiffs' coverage, and the Williams filed a motion to compel Aetna to produce the documents.
[2] ERC notes that it would have been impossible for the Williams to put it on notice within the policy period even if they had filed discovery directed to the identity of the Cavalier insurer at the time of filing suit. Since suit was not filed until fifteen days prior to the termination of the policy, statutory delays would not have required Cavalier to provide this information until after the policy period had expired.
[3] The Williams allege that they were thwarted in their efforts to serve Cavalier as well as their efforts to learn the identity of Cavalier's errors and omissions carrier. As ERC points out, the record does not confirm these allegations. However, we note that the Williams did seek appointment of a special process server because of alleged difficulties in obtaining service.
[4] But cf., Bank of Louisiana v. Mmahat, et al, 608 So.2d 218 (La.App. 5th Cir.1992) (holding "claims made" policy not against public policy where insured simply elected to drop coverage with one insurer and take up coverage with another insurer who had accepted coverage.); Reichert v. Bertucci, 94-1445 (La.App. 4 Cir. 1/31/95), 650 So.2d 821 (holding that failure to notify insurer of claim during the policy period precluded coverage where claim was not made against the named insured within the policy period).
[5] These cases considered Act 253 of 1918 (Edwards) and Act 55 of 1930, which reenacted and amended Act 253 (Davies, West.). However, the rationale of those cases is applicable to the instant case. R.S. 22:655, the current Direct Action Statute, applicable herein, provides: "It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable".
[6] We do not address whether such a notice requirement would be enforceable against a tort victim who was aware of the insurer's identity and the notice requirement within the policy period, but failed to notify the insurer.