686 So.2d 45 (1996)
Sims MURRAY, PlaintiffRespondent,
v.
CITY OF BUNKIE, et al., DefendantsRespondents,
International Surplus Lines Insurance Company, DefendantsRelator.
No. W96-297.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
Rehearing Denied January 28, 1997.
*46 Alfred Octave Pavy, Garett R. Duplechain, Opelousas, for Sims Murray.
James Thompson Lee, Bunkie, for City of Bunkie.
Laura K. Austin, Lafayette, for International Surplus Lines Insurance Company.
Before WOODARD, DECUIR and PETERS, JJ.
PETERS, Judge.
This case is before us on application for supervisory writs filed by International Surplus Lines Insurance Company in connection with the denial of its motion for summary judgment on the issue of insurance coverage under a "claims made" policy.

DISCUSSION OF THE RECORD
Sims Murray filed a suit for damages against the City of Bunkie (City); Joseph Timothy Stracener, a Bunkie police officer; United Community Insurance Company (UCIC); and International Surplus Lines Insurance *47 Company (ISLIC).[1] In his suit, Murray alleges that he suffered physical and mental damages during two incarcerations in the Bunkie City Jail, which occurred in August and September of 1993.[2] Murray contends that on both occasions he was wrongfully denied his ulcer and heart medication. Additionally, he contends that the second incarceration constituted false imprisonment in that he was taken into custody for the failure to pay a court-imposed fine that was not yet due. The City and Stracener answered Murray's suit and filed a cross-claim against ISLIC, claiming coverage under a policy issued by ISLIC.
It is not disputed that ISLIC provided a Law Enforcement Officers Professional Liability Insurance Policy to the City for the period from May 1, 1993 to May 1, 1994, and that this policy was in effect at the time Murray's claim arose. However, in its motion for summary judgment, ISLIC relies on the notification language of the policy. According to the terms of the insurance policy, ISLIC agreed "[t]o pay on the behalf of the Insured all sums which the Insured shall become legally obligated to pay as compensatory money damages as a result of claims first made against the Insured and reported to the Company during the policy period...." (Emphasis added). The Declarations Page contains the following notice: "THIS IS A CLAIMS MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS WHICH ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE." In support of its motion, ISLIC filed the affidavit of Greg Jankowski, a claims specialist for Coregis Insurance Company, the handling agency for ISLIC. According to Jankowski's affidavit, ISLIC did not receive notice of Murray's claim until August 17, 1994, after the expiration of the policy period.
In opposition to the motion, the City and Stracener presented the affidavit of Cynthia M. Dauzat, the Bunkie City Clerk. In her affidavit, Ms. Dauzat asserted that she received a demand letter from Murray dated September 27, 1993, and forwarded it to Southwest Louisiana Lumpkin Agency (Southwest), the insurance agent for the City. According to the affidavit, Ms. Dauzat received a letter dated November 1, 1993, from UCIC, through Southwest, notifying the City that there was no coverage under its policy for Murray's claim. She stated that as a result of the City's belief that Southwest had not provided coverage for such a claim, it was terminated as the insurance company for the City. Further, Dauzat asserted that by letter dated December 20, 1993, Southwest provided the City with notice that the claim of Murray had been closed. The next notice the City received, according to Ms. Dauzat, was by way of Murray's suit, which was served on August 15, 1994. Ms. Dauzat stated that after further investigation, it was determined that insurance had been provided by ISLIC. Ms. Dauzat admitted that the suit was then forwarded to ISLIC and that it was received by ISLIC on August 17, 1994.
The trial court denied ISLIC's motion for summary judgment, and ISLIC applied for supervisory writs to this appellate court. This case is now before us on that writ application.

OPINION
The trial court denied the motion for summary judgment, finding that a factual dispute and a legal issue existed as to whether the terms of the policy were complied with concerning whether notice was given as soon as practicable. In addition to the previously quoted policy provisions, Section IV of the policy provides in part:

*48 If during the policy period or extended reporting period:
(a) The Insured shall receive written or oral notice from any party that it is the intention of the party to hold one or more of the Insureds responsible for the results of an act, error or omission alleged to have been done by the Insureds while acting in their insured capacity, or the Insured shall become aware of any incident which may subsequently give rise to a claim being made against an Insured for an alleged act, error or omission: Then the Insured shall, as soon as practicable and within the policy period, give written notice to the Company of the receipt of notice or the incident.
(Emphasis added).
The trial court stated:
The policy is a contract between the parties. That policy was drawn up not by the City of Bunkie but by your company. In that policy they got language saying as soon as practical [sic]. But nobody typed that and held a gun to them and made them put it in there. If they didn't want to live by that language they shouldn't have put it in there. They should have said if it's not reported during the period of coverage there is no coverage, period. But they used the language as soon as practical [sic]. And first of all, coverage is to be presumed or in favor, [sic] second summary judgments are not favored. So for that reason I'm going to deny the Motion For Summary Judgment....
An insurance policy is a contract between the parties, and it should be construed by using the general rules of contract interpretation set forth in the Louisiana Civil Code. Lewis v. Hamilton, 94-2204 (La.4/10/95); 652 So.2d 1327. "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. The trial court apparently interpreted this policy provision to mean that the insured had the option of giving written notice either as soon as practicable or within the policy period. However, the policy does not so state. The use of the word "and" means that both conditions must be met. This policy provision is not ambiguous or unclear. Thus, the trial court erred in its interpretation of the policy.
When a policy clearly limits coverage to acts discovered and reported during the policy's effective term, this limitation of liability is not per se invalid. Livingston Parish Sch. Bd. v. Fireman's Fund American Ins. Co., 282 So.2d 478 (La.1973). Absent a conflict with a statute or public policy, insurers may limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by contract, if they do so by unambiguous and clearly noticeable provisions. Id. In Livingston Parish School Board, a school board sued to recover damages for the collapse of a roof on a building and named as a defendant a civil engineer employed in the construction of the building. The engineer filed a third-party demand against his professional liability insurer. The roof collapsed three days after the engineer's policy coverage had expired, but all of the services were performed prior to the policy's termination date. However, the policy provided coverage only for negligent acts occurring during the policy period if a claim was first made against the insured during the policy period. The supreme court rejected the contention that the limitation of liability was invalid as contrary to public policy. The court stated: "No reasonable expectation of coverage by the insured was defeated by the unambiguous provisions clearly limited [sic] coverage to those claims discovered and reported during the policy period." Id. at 482.
Livingston Parish School Board involved the issue of coverage as between the insured and the insurer. As to the cross-claim filed in the instant case by the insureds against ISLIC, we find that Livingston Parish School Board controls to defeat that claim under the terms of the insurance contract. However, Livingston Parish School Board did not address the issue of coverage in the context of a claim by an injured third party against the insurer.
In Williams v. Lemaire, 94-1465 (La.App. 4 Cir. 5/16/95); 655 So.2d 765, writ denied, *49 95-1514 (La.9/22/95); 660 So.2d 481, the plaintiffs asserted a claim against their insurance agent and the agent's insurer for alleged negligence in connection with the lapse of their uninsured motorist coverage. This claim arose in the context of an automobile accident that occurred on August 29, 1989. A claim was also asserted against the uninsured motorist carrier, who alleged it had issued a policy but that the policy had lapsed for nonpayment of premiums. The agent-insured was not served with the suit until January 20, 1992. The policy was in effect from September 15, 1985 to September 15, 1991. The policy unambiguously required that the insurer be notified of the potential claim by its insured during the policy period. The insurer relied on Livingston Parish School Board, but the fourth circuit found that the case did not support the insurer's argument as between the insurer and the third-party tort victim. In distinguishing Livingston Parish School Board, the Williams court stated: "Justice Tate, writing for the Court, recognized that `claims made' policies could be against public policy in some other situations. See, Id. at 481 n. 4." Williams, 655 So.2d at 767. The Williams court found that the case before it presented one of those "other situations." Specifically, the Williams court found that under the Direct Action Statute, La.R.S. 22:655, the plaintiffs were vested with rights at the time of the tort and that those rights could not be taken away because of the insured's failure to notify the insurera condition over which the plaintiffs had no control. We agree with Williams.
Williams cited West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351 (1942); and Edwards v. Fidelity & Casualty Co. of New York, 11 La.App. 176, 123 So. 162 (1929) in support of its holding. The Williams court stated:
In West plaintiffs' minor daughter had been killed by a truck owned by Monroe Bakery. The Second Circuit reversed a judgment for plaintiffs against the bakery and its insurer in solido, and entered judgment in favor of the bakery's insurer. The Supreme Court reversed, holding that the insurer could not escape liability under the policy because the insured had failed to give notice to the insurer as required by the policy. In so doing, the Court found that the Direct Action Statute gives to the injured party an immediate right of action directly against the insurer of the party responsible for the injuries, and expresses the public policy of Louisiana that a liability insurance policy is not issued primarily for the protection of the insured but for the protection of the public. Id. 46 So.2d at 129, 130, citing Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351, 357 (1942).
The West Court adopted the reasoning of our predecessor Court in Edwards v. Fidelity & Casualty Co. of New York, 11 La.App. 176, 123 So. 162, 163 (1929):
It is quite evident that, except in very rare cases, the party injured by the negligence of another has no knowledge as to whether or not that other is insured, and if he has ordinarily no knowledge as to whether there is insurance at all, then, clearly, he has no knowledge as to who the insurer may be if there is one. It is therefore not within his power to give the notice required by the policy, and, if notice is essential to his recovery, his right must, as we have stated, depend upon the other party. We do not think such was the intention of the legislators.

(Emphasis added).

West 46 So.2d at 126, quoting from Edwards v. Fidelity & Casualty Co., 11 La. App. 176, 123 So. 162 (1929).
Williams, 655 So.2d at 768.
Subsections (B)(1) and (D) of the Direct Action Statute, La.R.S. 22:655, provide in part:
B. (1) The injured person ... shall have a right of direct action against the insurer within the terms and limits of the policy....
D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or *50 additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.
The court in Edwards stated:
We think that the words "terms and limits of the policy" were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply.
Edwards, 123 So. at 163.
ISLIC contends that the Williams decision is flawed in that West and Edwards, upon which it based its ruling, did not involve "claims made" policies but involved occurrence policies. We see no meaningful distinction between the loss of rights suffered by an injured third party for failure to give notice under an occurrence policy and the loss of rights suffered by an injured third party for failure to give notice under a "claims made" policy. In both instances, injured third parties become vested with rights under the Direct Action Statute at the time of injury, and in both instances, the enforcement of the notice provisions would deprive injured third parties of their rights under the Direct Action Statute when it was not within their power to give notice.
ISLIC contends that Subsection (C) of the Direct Action Statute allows an insurer to assert as a defense against an action asserted by a third party that the insurer failed to receive adequate notice under a "claims made" policy. La.R.S. 22:655(C) provides:
C. It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

(Emphasis added).
We are of the opinion that this provision does not give the insurer the right to assert against the injured third party the contractual defense of failure to receive notice, although it could assert that defense against its insured. The court in Edwards stated:
It is quite true that [the insured's] failure to give notice to his insurer would have prevented his recovery from the insurer, had he himself paid the judgment, but that is because [the insured] had so contracted. As between parties to a contract, the contract itself is the law of the case. Here, however, the law of the case is not found solely within the four corners of the policy of insurance, but is contained primarily in the [Direct Action Statute].
Edwards, 123 So. at 163 (citation omitted).
Importantly, La.R.S. 22:655(B)(2) provides in part that "[n]othing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state." Thus, as was held in Williams, under the Direct Action Statute, the plaintiff was vested with rights at the time of the tort and those rights could not be taken away because of the insured's failure to notify the insurera condition over which the plaintiff had no control.
ISLIC also points us to our decision in Case v. Louisiana Medical Mutual Insurance Co., 624 So.2d 1285 (La.App. 3 Cir. 1993), which involved a "claims made" policy and the lack of timely notice to the insurer of the claim. In that case, the trial court granted summary judgment in favor of a medical malpractice insurer, finding that there was no coverage for the alleged act of malpractice because the incident was not reported during the policy's effective period. The summary judgment was granted against the plaintiffs; the physician was discharged in bankruptcy. The alleged act of malpractice occurred on September 26, 1986, and the policy period extended from July 1, 1986 to July 1, 1987. However, the insurer was not notified of the suit until October 5, 1987. This appellate court affirmed the summary judgment. In Case, we did not address the impact of the injured party's rights under the Direct Action Statute. To the extent that Case is in conflict with the views expressed in this opinion, we disagree with it. As set forth above, the contractual notice provision cannot be used to deprive the injured third party of his *51 vested rights under the Direct Action Statute.

DISPOSITION
For the foregoing reasons, we affirm the summary judgment insofar as it pertains to Murray's claim against ISLIC. However, we reverse the summary judgment insofar as it pertains to the insureds' claim against ISLIC. We assess costs of this appeal to ISLIC, Stracener, and the City of Bunkie, to the extent allowed by law.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Murray's petition actually names the "Coregis Group" as a defendant instead of ISLIC, and in their cross-claim, the City and Stracener identify the insurer as "Coregis Insurance Company." However, an affidavit in support of ISLIC's motion for summary judgment identifies its handling agency as Coregis Insurance Company, and it is not disputed that ISLIC is the proper party at interest in this litigation.
[2] The first incarceration period is alleged to have occurred from August 7, 1993 through August 10, 1993. The second incarceration period is alleged to have occurred from September 6, 1993 through September 8, 1993.