691 So.2d 1355 (1997)
Julia R. HEDGEPETH, et al.
v.
Dr. Gerard GUERIN, et al.
No. 96 CA 1044.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
Rehearing Denied April 25, 1997.
*1356 Ron S. Macaluso, Hammond, for Plaintiffs/Appellees Julia R. Hedgepeth, et al.
Henry D. Salassi, Jr., Keith C. Armstrong, Baton Rouge, for Defendant/Appellant Pacific Insurance Company.
Gerard Guerin, Hammond, in Proper Person.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a medical malpractice action.

*1357 BACKGROUND

Pacific Insurance Company (Pacific) issued an individual professional liability policy to Dr. Gerard G. Guerin, a Hammond podiatrist. The policy was a "claims made" policy covering the period between January 31, 1985, and January 31, 1986.
On October 2, 1985, Julia Hedgepeth, a diabetic, consulted Dr. Guerin for treatment of a callous on her right foot. On that same day, Dr. Guerin surgically removed the callous from Ms. Hedgepeth's foot and sutured the incision under local anesthesia. Thereafter, a severe infection developed, resulting in diabetic gangrene, which ultimately required the amputation of the upper left portion of Ms. Hedgepeth's right foot. Ms. Hedgepeth was left with permanent scarring and disfigurement.
On November 10, 1985, Pacific cancelled its policy of professional liability insurance covering Dr. Guerin. Thereafter, on January 31, 1986, the policy expired by its own terms.
On July 23, 1986, Ms. Hedgepeth and her husband, William, filed a medical malpractice action against Dr. Guerin and Pacific. Dr. Guerin answered the petition, denying the allegations and averring extinguishment of the obligation by virtue of a discharge in bankruptcy granted to Dr. Guerin on May 1, 1986.
Pacific filed a motion for summary judgment, contending that it did not receive notice of plaintiffs' claim against Dr. Guerin until after coverage had been cancelled on November 10, 1985, and/or had expired on January 31, 1986. Pacific reasoned that, as a result, Ms. Hedgepeth's claim was made outside the policy period, and the Pacific "claims made" policy afforded no coverage to Dr. Guerin. The trial court denied Pacific's motion for summary judgment, finding that genuine issues of material fact remained.
Pacific also filed a dilatory exception pleading the objection of prematurity. In its exception, Pacific contended that the suit for medical malpractice was filed prematurely because an opinion had not been rendered by a medical review panel.[1] On June 14, 1989, the trial court rendered judgment, sustaining the exception pleading the objection of prematurity and dismissing, without prejudice, plaintiffs' claims against Pacific.
On June 19, 1991, the medical review panel rendered an opinion, finding that Dr. Guerin failed to comply with the appropriate standard of care in his treatment of Ms. Hedgepeth.
On November 25, 1991, Ms. Hedgepeth, individually and on behalf of her minor child, Jonathan,[2] and her late husband, William,[3] filed a medical malpractice action against Dr. Guerin and Pacific.[4] Pacific answered the petition, denying coverage and averring that the "claims made" policy covering Dr. Guerin had been cancelled by Pacific, effective November 10, 1985. Dr. Guerin answered, alleging that he had filed for bankruptcy and that this debt had been discharged.
On September 27, 1995, trial on the merits was held. On November 21, 1995, a judgment was signed, ordering that Pacific pay to the Succession of Julia Hedgepeth $236,957.79 for medical expenses and general damages; to Jonathan Hedgepeth $25,000.00 for his loss of consortium; and to plaintiffs $1,862.08 for trial expenses, with legal interest thereon from date of judgment. The judgment also awarded legal interest on the awards for medical expenses, general damages, and loss of consortium from the date of judicial demand in the original suit, July 23, 1986. Pacific filed a motion for new trial, *1358 which the trial court denied. Thereafter, the trial court issued an amended judgment[5] in favor of the Succession of Julia Hedgepeth for medical expenses and general damages in the amount of $236,957.79, in favor of Jonathan Hedgepeth for his loss of consortium in the amount of $25,000.00, in favor of the plaintiffs in the amount of $1,862.08 for trial expenses with legal interest thereon from date of judgment. The judgment also provided that the awards for the medical expenses, general damages, and loss of consortium bear legal interest from the date of the filing of the complaint with the medical review panel, July 23, 1986. The judgment further ordered that Pacific pay plaintiffs its policy limits of $100,000.00, plus legal interest on the full amount of the judgment from July 23, 1986, until paid, and the trial expenses which had been awarded. In its written reasons for judgment, the trial court noted, in part, as follows:
The policy is a so-called "claims made" policy.
The facts are rather clear in so far as the liability of Dr. Guerin. Dr. Guerin was clearly guilty of malpractice in his treatment of Julia Hedgepeth.
There is no dispute to the fact that defendant, Pacific Insurance Company issued a policy to Dr. Guerin. There is also no dispute regarding the fact that the treatment of Mrs. Hedgepeth by Dr. Guerin took place during the period of policy coverage.
The dispute is over "notice" to the company. There was no proof that Dr. Guerin notified Pacific Insurance Company in writing on [sic] otherwise running [sic] the coverage period.
The coverage portions of the policy provide coverage for sums which the insured shall be legally obligated [to pay].
The failure of Dr. Guerin to notify his insurer is not a failing of the claimant. The failure of Dr. Guerin may very well make him liable to his insurer, but would not in the opinion of this court relieve the said insurer of any liability to claimant for "sums which the insured shall be legally obligated [to pay"].
Pacific appealed from the trial court judgment, assigning the following specifications of error:
1. The trial court erroneously ignored the unambiguous terms of the "claims made" policy in concluding that notice was not required for coverage to exist under Pacific Insurance Company's policy.
2. The trial court erred in awarding judicial interest on the full amount of the judgment with judicial interest to accrue from July 23, 1986, until paid.

ENFORCEABILITY OF "CLAIMS MADE" POLICY PROVISIONS
Pacific contends that the language in its "claims made" policy, which limits coverage to acts discovered and reported during the policy term, is clear and unambiguous and that the trial court erred in finding that coverage existed.
In the portion of the policy entitled "COVERAGE PART," the Pacific policy provides the following "Notice":
This is known as a "claims made" policy. Except to the extent as may be provided herein, this coverage is limited generally to claims arising from the performance of professional services subsequent to the retroactive date stated in the declarations and first made against the company while the policy is in force. Please read the policy carefully.
The "Coverage Agreement" for "Coverage MIndividual Professional Liability" provides as follows:
The company will pay on behalf of the insured:
All sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies caused by a medical incident, occurring subsequent to the retroactive date,[6] for which claim is first made against the insured and reported to the company during the policy period, arising out of the *1359 practice of the insured's profession as a podiatrist. (Footnote added.)
The policy addresses "When Claim Is to Be Considered as First Made" as follows:
A claim for injury shall be considered as being first made at the earlier of the following times:
(a) when the insured first gives written notice to the company that a claim has been made, or
(b) when the insured first gives written notice to the company of specific circumstances involving a particular person which may result in a claim. Reports of incidents made by the insured to the company as part of engineering or loss control services shall not be considered notice of claim.
All claims arising out of the same medical incident shall be considered as having been made at the time the first claim is made.
Clearly, the Pacific policy is a "claims made" or "discovery" policy. Under a "claims made" policy, coverage is effective only if the negligent harm is discovered and reported within the policy term. This is to be contrasted with an "occurrence" policy, where the coverage is effective if the negligent harm occurs within the policy period, regardless of the date of discovery. Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478, 481 (La.1973).
An insurance policy is a contract and has the effect of law between the parties. LSA-C.C. art.1983; Spurrell v. Ivey, 25,359, 25,360, p. 8 (La.App. 2nd Cir. 1/25/94), 630 So.2d 1378, 1383. As a general rule, where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible or invalid. Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d at 481; Murray v. City of Bunkie, 96-297, p. 4 (La.App. 3rd Cir. 11/6/96), 686 So.2d 45, 48; Williams v. Lemaire, 94-1465, pp. 3-4 (La. App. 4th Cir. 5/16/95), 655 So.2d 765, 767, writ denied, 95-1514 (La.9/22/95), 660 So.2d 481. This is in accordance with the general principle that, in the absence of conflict with statutory provision or public policy, insurers may by unambiguous and clear notice provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract. Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d at 481; Murray v. City of Bunkie, 686 So.2d at 48; Reichert v. Bertucci, 94-1445, p. 4 (La.App. 4th Cir. 1/31/95), 650 So.2d 821, 823.
After thoroughly reviewing the Pacific policy, we are convinced that the policy language is clear and unambiguous. The plain intent of the policy language is to restrict Pacific's liability to those claims occurring and first made during the policy period. By policy definition, a claim is first made either when the insured first gives written notice to the insurer that a claim has been made or when the insured first gives written notice to the insurer of specific circumstances involving a particular person which may result in a claim.
In order for coverage to exist under the provisions of the Pacific policy, Ms. Hedgepeth's claim must have arisen subsequent to the effective date of the policy and Dr. Guerin must have given Pacific written notice, during the policy period, of either Ms. Hedgepeth's claim against him or of specific circumstances involving Ms. Hedgepeth which might result in a claim against him.
The record indicates that the Pacific policy period commenced on January 31, 1985, and continued through January 31, 1986. The alleged malpractice occurred on October 2, 1985. The Hedgepeths first filed a malpractice action against Dr. Guerin on July 23, 1986, nearly six months after the policy period had expired. Thereafter, Dr. Guerin was served with the petition for damages, and, in August of 1986, he notified Pacific of the action. The record is clear that, at no time prior thereto, was Pacific notified of the claim. Accordingly, the claim against Pacific was not "first made" during the policy period, and, as a result, under the language of the Pacific policy, there was no coverage under the policy.
*1360 However, our inquiry does not end here. In the instant case, plaintiffs challenge the validity of the "claims made" policy on the grounds that it violates statutory law. Plaintiffs' challenges to the "claims made" policy allege conflict between the Pacific policy provisions and various statutory provisions, including the Direct Action Statute, the statutes setting forth the prescriptive period for insurance and medical malpractice actions, and general provisions of the Medical Malpractice Act.
Insurers may by unambiguous and clear notice provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract, but this ability to contract is limited by statute and/or public policy. Even "claims made" policies, which clearly and unambiguously limit an insurer's liability to its insured, may be unenforceable against third party claimants, if those provisions violate public policy or conflict with statutory provisions. See Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d at 481, n. 4; Williams v. Lemaire, 655 So.2d at 768-69; and Murray v. City of Bunkie, 686 So.2d at 50-51. But see Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d 1285, 1289 (La.App. 3rd Cir.1993),[7]and Reichert v. Bertucci, 650 So.2d at 823.[8]
In Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478, the school board sued the engineer for the collapse of a roof of a building, and the engineer filed a third-party *1361 demand against his professional liability insurer. The services had been performed by the engineer between August 9, 1968, and July 11, 1969. The engineer's professional liability policy covered the period between July 11, 1968, and July 11, 1969. The coverage afforded by the professional liability policy extended to negligent acts occurring during the policy period "[i]f claim therefor is first made against the insured during this policy period." The damage (the collapse of the roof) occurred on July 14, 1969.
In upholding the trial court judgment, granting the insurer's motion for summary judgment and dismissing the engineer's third-party demand against his insurer, the court stated:
Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible. J.M. Brown Const. Co. v. D & M Mechanical Contr., Inc., 222 So.2d 93 (La. App. 1st Cir.1969); see also Home Ins. Co. v. A.J. Warehouse, Inc., 210 So.2d 544 (La.App. 4th Cir.1968), syllabus 6. This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract. Snell v. Stein, 261 La. 358, 259 So.2d 876, 878 (1972), and decisions there cited.
Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d at 481.
However, the court acknowledged that, in some situations, enforcement of such a provision may be against public policy. See Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d at 481, n. 4.
In Williams v. Lemaire, 655 So.2d at 765, an automobile accident occurred on August 29, 1989. The plaintiff filed suit against the other driver and her own UM insurer, among others. The UM insurer responded that it had no policy in effect covering the plaintiff because of a lapse in coverage for non-payment of the premium. The plaintiff then added her insurance agency for alleged negligence in connection with the lapse of her UM coverage. The agency was not served with notice of the suit until January 20, 1992, four months after its errors and omissions insurance had expired. However, the plaintiff claimed she told the agency within the policy period that a claim would be filed against it.
The errors and omissions insurer relied on Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478, to support its position that a policy limitation, requiring notice to the insurer within the policy period, is not per se impermissible and a policy that limits coverage to "claims made" during the policy period is not against public policy. Our brethren of the Fourth Circuit noted that the Livingston case supports that argument, at least as between the two contracting parties, the insured and the insurer. However, the court noted that Livingston did not involve the claim of a third-party tort victim against the insurer and also noted that Justice Tate, writing for the Louisiana Supreme Court in Livingston, recognized that "claims made" policies may be against public policy in some other situations. See Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d at 481, n. 4.
The court in Williams v. Lemaire then considered whether the facts presented one of those "other situations" referred to by Justice Tate. The court noted that the tortious conduct occurred during the policy period and that the injured party allegedly put the insured on notice that a claim would be made during the policy period. The plaintiff did not know whether the insurance agency was insured, nor was it within the plaintiff's power to give notice to the insurer as required by the policy. Accordingly, the court determined that the enforcement of such a policy provision deprived the plaintiff of her right of action under LSA-R.S. 22:655. The court then concluded that the portions of the errors and omissions insurance policy, conditioning coverage upon notice to the insurer of the claim during the policy period, was unenforceable against the plaintiff under the facts presented.
*1362 In Murray v. City of Bunkie, 686 So.2d at 45, the issue of insurance coverage on a "claims made" policy was before our brethren of the Third Circuit on writ application from a denial of a motion for summary judgment. The incidents giving rise to the lawsuit occurred in August and September, 1993. The policy period was from May 1, 1993, through May 1, 1994. Notice was provided to the insurer in August, 1994.
The court affirmed the trial court judgment, denying the insurer's motion for summary judgment, as to the plaintiff's claim.[9] The court, referring to the Direct Action Statute, LSA-R.S. 22:655, stated:
Importantly, La. R.S. 22:655(B)(2) provides in part that "[n]othing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state." Thus, as was held in Williams, under the Direct Action Statute, the plaintiff was vested with rights at the time of the tort and those rights could not be taken away because of the insured's failure to notify the insurera condition over which the plaintiff had no control.
Murray v. City of Bunkie, 686 So.2d at 50.
Accordingly, the court held that the contractual notice provision in the "claims made" policy could not be used to deprive the injured third party of his vested rights under the Direct Action Statute.
The Louisiana Supreme Court case of Livingston provides the basis for the proposition that "claims made" policies generally are not against public policy and were not against public policy under the specific facts presented in that case. However, as the court pointed out, such policies could be against public policy in some other situations. The Third and Fourth Circuit Courts of Appeal have addressed situations in which "claims made" policy provisions may violate public policy or statutory provisions. Both courts have rendered decisions, determining that "claims made" policies are unenforceable as to thirdparty tort victims and cannot deprive those claimants of their actions against insurers under the Direct Action Statute. See Williams v. Lemaire, 655 So.2d at 769, and Murray v. City of Bunkie, 686 So.2d at 50-51. But see Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d at 1289, and Reichert v. Bertucci, 650 So.2d at 823.
In the instant case, plaintiffs' challenge to the "claims made" policy provisions involves alleged violations of the Direct Action Statute, the prescriptive period for insurance and medical malpractice actions, and general principles of the Medical Malpractice Act.

A. Direct Action Statute.
The Direct Action Statute (LSA-R.S.22:655)[10] makes an insurer solidarily liable with the insured to the claimant. Rodriguez v. Louisiana Tank, Inc., 94-0200, p. 6 (La.App. 1st Cir. 6/23/95), 657 So.2d 1363, 1367, writ denied, 95-2268 (La.11/27/95), 663 So.2d 739. The Direct Action Statute also vests the injured party with rights at the time of the tort to institute his action directly against the insurer within the terms and limits of the policy. Under the rationale espoused by the Third and Fourth Circuit Courts of Appeal in Williams v. Lemaire, 655 So.2d at 765 and Murray v. City of Bunkie, 686 So.2d at 45, those rights cannot be taken away from a plaintiff because of the insured's failure to notify the insurera condition over which the injured party had no control. Therefore, those courts have held that, if language in a "claims made" policy between an insurer and its insured requires notice by the insured to the insurer within the policy period thereby defeating an injured party's right to proceed directly against the insurer, that language is against public policy. Williams v. Lemaire, 655 *1363 So.2d at 769; Murray v. City of Bunkie, 686 So.2d at 45.
However, unlike these cases, the record in this case is devoid of any evidence that the injured party provided notice to the insured during the policy period or that the insured failed to communicate the information to the insurer during the policy period. Here, plaintiffs did not make a claim during the policy period. As such, we cannot say that, under the facts presented in the instant case, the language in the Pacific policy, requiring notice to the insurer during the policy period, violated statutory provisions or is unenforceable.

B. Prescriptive Statutes.
LSA-R.S. 22:629 provides, in pertinent part, as follows:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
(3) Limiting right of action against the insurer ... to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code. (Emphasis added.)
B. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
LSA-R.S. 9:5628 A provides as follows:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. (Emphasis added.)
LSA-R.S. 40:1299.45 provides, in pertinent part, as follows:
A. (1) Only while malpractice liability insurance remains in force ... are the health care provider and his insurer liable to a patient ... for malpractice to the extent and in the manner specified in this Part.
* * * * * *
C. Any provision in a policy attempting to limit or modify the liability of the insurer contrary to the provisions of this Part is void, except that a provision in a malpractice liability insurance policy approved by the board which limits the aggregate sum for which the insurer may be liable during the policy period shall be valid.
These statutes guarantee a medical malpractice claimant a period of not less than one year within which to institute a claim against a health care provider and/or his insurer. However, a "claims made" policy, requiring that a claim be made within the policy period, may effectively reduce the time period within which a medical malpractice claimant may institute his action against the insurer.
Under the language of the Pacific "claims made" policy, Pacific agreed to pay on behalf of Dr. Guerin the sums which he became legally obligated to pay for any claim, arising out of the practice of Dr. Guerin's profession as a podiatrist, which occurred and was first made against Dr. Guerin and reported to Pacific while the policy was in force. The policy provides that a claim is first made when Dr. Guerin gives written notice to Pacific that a claim has been made or that specific circumstances involving a particular person may result in a claim.
In the instant case, the medical procedure giving rise to plaintiffs' malpractice action *1364 occurred in October, 1985, which was clearly while the policy was in force. Plaintiffs' claim for medical malpractice was initiated on July 23, 1986, and reported to the insurer on August 7, 1986, which dates were outside the policy period, but which were less than one year from the date of the acts giving rise to the medical malpractice action. However, Pacific's policy limited its liability to those acts which occurred and were reported prior to the cancellation date or the end of the policy's coverage. As a result, plaintiffs in this case effectively had less than one year from the date of the act of malpractice to commence the action against Pacific.
We conclude that a policy provision, which effectively reduces the prescriptive period against the insurer to less than the statutorily mandated period, is without effect. Such a provision would enable an insurer to escape liability for an act of medical malpractice committed shortly before the end of the policy period (e.g., a week or a month), but not reported to the insurer until after the policy was no longer in force. As a result, the effective prescriptive period against the insurer would be reduced from one year to a shorter period. This would be a clear violation of the statutory law, which prohibits limiting a right of action against an insurer to less than one year.
Accordingly, those portions of Pacific's "claims made" policy, limiting the liability of Pacific to those claims which occurred and were reported while the policy was in force, are unenforceable and without effect under the facts of this case. Therefore, the Pacific policy would afford coverage to those acts of malpractice which occurred during the policy period, were filed within one year from accrual of the cause of action, and were reported to the insurer within one year of the date from accrual of the cause of action. Therefore, we find that the trial court correctly determined that the Pacific policy afforded coverage for plaintiffs' claim.

LEGAL INTEREST
Pacific contends that the trial court erred in awarding legal interest on the entire amount of the judgment, with interest to accrue from July 23, 1986. Thus, the issues for our review are (1) when does legal interest begin to run and (2) whether Pacific owes pre-judgment legal interest on the amount of the judgment in excess of the policy limits.

A. When does legal interest begin to run?
Pacific contends that legal interest is owed, at the earliest, from April 1, 1991. In support of its contention, Pacific cites LSA-R.S. 40:1299.42 B(2), which provides, in pertinent part, as follows:
A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient. (Emphasis added.)
However, LSA-R.S. 40:1299.42 B(2) was amended by La. Acts 1990, No. 967, § 2, effective October 1, 1990, to add the phrase "plus interest thereon accruing after April 1, 1991." Plaintiffs argue that, because their claim arose before the effective date of the amendment, the prior law regarding legal interest is controlling. We agree. See Seagers v. Pailet, 95-924 (La.App. 5th Cir. 5/15/96), 680 So.2d 46, writ denied, 96-2730 (La.1/6/97), 685 So.2d 117.
Prior to October 1, 1990, legal interest on medical malpractice claims was addressed solely in LSA-R.S. 40:1299.47(M), which provided as follows:
Legal interest shall accrue from the date of filing of the complaint with the board on a judgment rendered by a court in a suit for medical malpractice brought after compliance with this Part. (Emphasis added.)
The record reveals that plaintiffs filed a complaint requesting a medical review panel on July 23, 1986. Accordingly, plaintiffs are entitled to legal interest from that date as ordered by the trial court.

B. Does Pacific owe pre-judgment legal interest on the amount of the judgment in excess of its policy limits?
Pacific contends that, pursuant to its policy, it can only be responsible for legal interest on the "full amount of the judgment" *1365 from January 2, 1996, the date that the amended judgment was signed.
All liability carriers owe interest on their policy limits from the date of judicial demand. See LSA-R.S. 13:4203. Any policy provision which attempts to limit an insurer's liability for legal interest on the policy limits contravenes the public policy of LSA-R.S. 13:4203. Martin v. Champion Insurance Company, 95-0030, p. 5 (La.6/30/95), 656 So.2d 991, 995. However, LSA-R.S. 13:4203 does not prohibit insurers from lowering, excluding, or extending their interest liability on amounts in excess of their policy limits. Martin v. Champion Insurance Company, 656 So.2d at 995. Insurers utilize supplemental payment provisions to outline their obligations with regard to interest. Martin v. Champion Insurance Company, 656 So.2d at 995. Thus, to determine an insurer's interest obligation on an excess judgment, we must refer to the supplemental payment provisions contained in the insurance contract.
The Pacific policy contains the following supplemental payment provision:
The company will pay in addition to the applicable limit of liability:
(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;
The jurisprudence has interpreted identical supplemental payment clauses on numerous occasions. The courts have consistently held that, under these supplemental payment clauses, the insurer intended to provide its insured with supplemental protection for all interest and costs on the entire judgment which accrues after entry of judgment. See Barnes v. Thames, 578 So.2d 1155, 1170 (La. App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991); Remedies v. Lopez, 560 So.2d 118, 120 (La.App. 3rd Cir.), writ denied, 563 So.2d 1155 (La.1990); Moon v. City of Baton Rouge, 522 So.2d 117, 127 (La.App. 1st Cir. 1987), writs denied, 523 So.2d 1319, 1320, 1327 (La.1988); Fletcher v. Leader National Insurance Company, 513 So.2d 1226, 1228 (La.App. 4th Cir.1987).
Accordingly, we find that the trial court erred in finding Pacific liable for legal interest on the entire amount of the judgment (including the portion in excess of their policy limits) from July 23, 1986, until paid. Pacific is liable for legal interest on its policy limits from July 23, 1986. However, Pacific is liable for legal interest on the excess amount of the judgment from January 2, 1996 (the date of the amended judgment), until paid.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to award legal interest on the portion of the judgment in excess of the Pacific policy limits from January 2, 1996. In all other respects, the judgment of the trial court is affirmed. Pacific is cast for all costs on appeal.
AS AMENDED, AFFIRMED.
NOTES
[1] The Louisiana Medical Malpractice Act requires that a complaint be presented to a medical review panel before suit can be filed against a health care provider or his insurer. LSA-R.S. 40:1299.47 B(1)(a)(i).
[2] Jonathan D. Hedgepeth was the adopted son of Julia and William Hedgepeth.
[3] Mr. Hedgepeth had died subsequent to the filing of the first petition. By amending petition, Judy Griffin, on behalf of Jonathan D. Hedgepeth, a minor and the sole heir of Mr. Hedgepeth, substituted herself as plaintiff for Mr. Hedgepeth.
[4] After suit was filed, Ms. Hedgepeth died, and Judy Griffin, as provisional administratrix of the Succession of Julia Hedgepeth, filed an amending petition, substituting herself as plaintiff for Ms. Hedgepeth.
[5] Neither party has assigned as error the amendment of the final judgment.
[6] The declarations of the Pacific policy sets forth that the retroactive date is January 31, 1985.
[7] In Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d 1285 (La.App. 3rd Cir. 1993), a patient brought a suit against a medical malpractice insurer, alleging that the insurer's failure to promptly dispute coverage resulted in the insurer's liability. The facts revealed that the plaintiff was treated on September 26, 1986. On September 25, 1987, the plaintiff filed a claim for medical malpractice. The policy issued by LAMMICO extended coverage from July 1, 1986, to July 1, 1987. On November 5, 1987, the physician filed for bankruptcy and subsequently was discharged. Plaintiff then filed suit against LAMMICO for failure to promptly dispute coverage and for its solidary liability with the physician for his negligence.

The Third Circuit determined that the "claims made" policy provided coverage for claims which were "first made against the insured and reported to the company during the period between August 1, 1986 and July 1, 1987," noting that such policies are not against public policy. In support of this position, the court relied on the holding of Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La.1973). The court stated:
Clearly, the policy provided the conditions which had to be met to claim coverage under its terms. It is undisputed that appellants did not provide oral or written notice to LAMMICO during the policy's effective period advising it of the alleged act of malpractice. The first recorded notice of appellants' claims occurred on September 25, 1987 when they filed a petition with the Commissioner of Insurance naming Dr. Deacon as a defendant. LAMMICO acknowledged receiving a copy of the petition on October 5, 1987, long after the effective period of coverage. While LAMMICO stated in supplemental affidavit it did not receive written communication whatsoever from Dr. Deacon regarding a potential claim by Mary Case or any member of her family, more specifically the affidavit expressed "the earliest date on which a claim was `first made' to LAMMICO was October 5, 1987."
Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d at 1285.
Accordingly, the court affirmed the trial court judgment, granting the motion for summary judgment in favor of LAMMICO and finding that no coverage existed under a "claims made" policy for a claim first asserted after the policy expired.
[8] In Reichert v. Bertucci, 91-1445, p. 5 (La.App. 4th Cir. 1/31/95), 650 So.2d 821, 823, the court held that a "claims made" policy, requiring that the claim be made during the policy term in order to be covered, did not violate public policy. In that case, the plaintiff received medical treatment on March 12, 1986. She filed a complaint against physician # 1 on March 4, 1987. In March, 1988, plaintiff amended her complaint to add physician # 2, who was served with the complaint in May, 1988. The policy covering physician # 2 was in effect from December 9, 1986, to December 9, 1987, and his insurer was added as a defendant in August, 1993.

The trial court granted a summary judgment in favor of the insurer on the grounds that notice by the insured was untimely under the "claims made" policy. On appeal, the court held that the policy provisions were clear and unambiguous and that the failure to notify the insurer of the claim during the policy period precluded coverage, noting:
[T]he language [in the policy] is not, per se, against public policy, nor do we find any public policy violation in our interpretation of that language. In addition, we know of no statute, nor have we been cited any, which is violated by the provisions in [the insurance] policy.
Reichert v. Bertucci, 650 So.2d at 823.
[9] The appellate court judgment is worded as "affirming" the trial court. Since the case was before the court on a writ application, a more accurate rendition would have reflected that certiorari was granted and, after exercising its supervisory jurisdiction, the writ was denied, effectively sustaining the trial court judgment.
[10] LSA-R.S. 22:655 B provides, in pertinent part, as follows:

(1) The injured person ... at [his] option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido.