# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #035

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **1st day of July, 2014**, are as follows:

**BY WEIMER, J.:**

2013-C -1734        JOYCE GORMAN v. CITY OF OPELOUSAS, ET AL. (Parish of St. Landry)

That portion of the decision of the appellate court that reversed the trial court's grant of summary judgment in favor of Lexington as to Gorman is reversed, and the trial court's judgment in this regard is reinstated.  The matter is remanded to the trial court for further proceedings.
REVERSED IN PART; JUDGMENT REINSTATED IN PART; REMANDED TO THE TRIAL COURT.

JOHNSON, C.J., dissents for the reasons assigned by Justice Knoll.
KNOLL, J., dissents and assigns reasons.
HUGHES, J., dissents for reasons assigned by Justice Knoll.

**07/01/14**

SUPREME COURT OF LOUISIANA

NO. 2013-C-1734

JOYCE GORMAN

VERSUS

CITY OF OPELOUSAS, ET AL.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*THIRD CIRCUIT PARISH OF ST. LANDRY*

**WEIMER, Justice**

An insurance company seeks review of a decision on the issue of coverage under a claims-made-and-reported policy. The appellate court found that, under the Direct Action Statute, an insurer cannot use the policy's claim-reporting requirement to deprive an injured third party of a right that vests at the time of injury. After considering the applicable law, we find that the reporting provision in a claims-made-and-reported policy is a permissible limitation on the insurer's liability as to third parties and does not violate the Direct Action Statute. Accordingly, we reverse that portion of the court of appeal's decision relating to the claim of the injured third party, and we reinstate the trial court's judgment, finding no coverage. The matter is remanded to the trial court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

On September 28, 2009, Brian Armstrong (Armstrong) was incarcerated at the city jail in Opelousas when he was allegedly beaten by two other inmates. He later

died. On September 27, 2010, Armstrong's mother, Joyce Gorman (Gorman), filed a survival action and a wrongful death action against the city of Opelousas and its police department (collectively the City).[1] After being served with the petition, the City filed an answer.

In December 2010, Gorman directed discovery to the City seeking the identity of its insurer and requesting a copy of any applicable insurance policy. When the City failed to respond, Gorman filed a motion to compel, which was granted in June 2011. Subsequently, the City identified Lexington Insurance Company (Lexington) as its insurer. Gorman then filed an amended petition on September 7, 2011, naming Lexington as an additional defendant. The amended petition was served on September 22, 2011. Lexington answered Gorman's petition, asserting numerous affirmative defenses. Afterwards, Lexington filed a motion for summary judgment, seeking to have Gorman's direct action claim against it dismissed based on lack of coverage because her claim had not been reported to Lexington within the policy's stated time limit. Gorman and the City then filed cross motions for summary judgment on the issue of coverage.

The Lexington policy provided:

> NOTICE: THIS IS A CLAIMS MADE POLICY. COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO US WHILE THE COVERAGE IS IN FORCE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS POLICY COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

In relevant part, the policy further stated:

SECTION I. INSURING AGREEMENT

---

[1] The two inmates who allegedly harmed Armstrong were also named as defendants.

A. **We** shall pay those amounts that the Insured becomes legally obligated to pay to compensate others for **bodily injury, property damage**, or **personal injury** arising out of the Insured's **wrongful act**. The **wrongful act** shall take place on or after the retroactive date, but before the end of the **policy period**, and shall arise solely in **your** capacity as a law enforcement agency. A claim for a **wrongful act** shall be first made against the Insured and reported to us in writing during the **policy period** or any extended reporting period **we** provide under this policy.[2] [Emphasis in original.]

The pertinent policy period is as follows:

POLICY PERIOD: 12:01 A.M., standard time at the address of the **Named Insured** as stated herein.
From: 04/17/2010          To: 04/17/2011
Name of Law Enforcement Department and Address of the Insured Location:
CITY OF OPELOUSAS
318 NORTH COURT STREET
OPELOUSAS, LA 70570

Wrongful acts dating back to April 17, 2005, the policy's retroactive date, are covered by the policy. The City had also purchased a similar policy from Lexington for the period of April 17, 2011, to April 17, 2012.

Relying on **Hood v. Cotter**, 08-0215, 08-0237 (La. 12/2/08), 5 So.3d 819, the trial court observed that "the policy language limiting coverage to those claims made and reported during the policy period did not serve to limit [Gorman's] right of action." In accordance with **Hood**, the trial court explained that the policy language "provides the scope of coverage bargained for by the [City]" and recognized that any contrary interpretation "would effectively convert [the City's] claims made policy into an occurrence policy," which is contrary to "the bargained for exchange" between Lexington and the City. Accordingly, the trial court granted Lexington's motion for summary judgment as to the City and Gorman, denied the cross motions filed by the City and Gorman, and dismissed "all claims adverse to Lexington."

---

[2] The "extended reporting period" provision is not pertinent to the facts of this case.

3

On appeal by the City and Gorman, the appellate court initially found that the City's purchase of a separate claims-made policy for the period of April 17, 2011, to April 17, 2012, the period in which Lexington was added as a defendant, had no bearing on the issue of coverage. Therefore, the City's and Groman's "merged into one" argument for continued coverage under the subsequent policy was rejected. **Gorman v. City of Opelousas**, 12-1468, p. 3 (La.App. 3 Cir. 5/1/13), 111 So.3d 1195 (unpublished). Applying **Murray v. City of Bunkie**, 96-297, p. 5 (La.App. 3 Cir. 11/6/96), 686 So.2d 45, 48, the appellate court held that the reporting provision in the City's policy could be applied to defeat the City's alternative claim under the April 17, 2010-April 17, 2011 policy and affirmed the grant of summary judgment in Lexington's favor insofar as it pertained to the City.

After observing this court's refusal to address the issue of coverage in the context of an injured third party's claim in **Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins. Co.**, 282 So.2d 478 (La. 1973), the appellate court resorted to its prior decisions in **Murray** and **Pittman v. Nutmeg Ins. Co.**, 97-524, p. 5 (La.App. 3 Cir. 3/6/98), 708 So.2d 832, 834, for guidance in resolving the issue of coverage as to Gorman. Relying on **Murray**, the appellate court recognized that the Direct Action Statute gave Gorman a vested right at the time the tort was committed that "could not be taken away because of the insured's failure to notify the insurer - a condition over which the plaintiff had no control." **Gorman**, 12-1468 at 5, *quoting* **Murray**, 96-297 at 8, 686 So.2d at 50. The court would not allow the policy's reporting provision to serve "as a coverage defense against third parties who had no knowledge of the provision and who had taken steps to pursue their legal remedies"[3] so as to deprive the injured third party of "her vested rights under the direct action statute."

---

[3] See **Gorman**, 12-1468 at 5, *quoting* **Pittman**, 97-524 at 5, 708 So.2d at 834.

4

Accordingly, the trial court's grant of summary judgment against Gorman was reversed, and the matter was remanded for further proceedings.

Lexington's subsequent writ application to this court was granted[4] to address whether the Direct Action Statute affords an injured third party a vested right that cannot be taken away because of an insured's failure to report a claim to the insurer under a claims-made-and-reported policy as found in **Murray**. Relying on the reporting provision in its policy, Lexington contends that the appellate court improperly disregarded this court's decision in **Hood** and imposed insurance coverage on Lexington where none existed.

### DISCUSSION

An insurance policy is a contract between the insured and insurer and has the effect of law between them. See La. C.C. arts. 1906 & 1983; **Peterson v. Schimek**, 98-1712, p. 4 (La. 3/2/99), 729 So.2d 1024, 1028. "The role of the judiciary in interpreting an insurance contract is to ascertain the common intent of the insured and insurer as reflected by the words in the policy." **Peterson**, 98-1712 at 4, 729 So.2d at 1028, *citing* La. C.C. art. 2045. "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." **Peterson**, 98-1712 at 4-5, 729 So.2d at 1028, *citing* La. C.C. art. 2046. Where a policy unambiguously and clearly limits coverage to claims made and reported during the policy period, such limitation of liability is not per se impermissible. See **Hood**, 08-0215, 08-0237 at 18, 5 So.3d at 830; **Anderson v. Ichinose**, 98-2157, p. 7 (La. 9/8/99), 760 So.2d 302, 306, *citing* **Livingston Parish Sch. Bd.**, 282 So.2d at 481.

---

[4]  See **Gorman v. City of Opelousas**, 13-1734 (La. 11/8/13), 129 So.3d 522.

5

According to the pertinent terms of the City's policy, Lexington agreed to pay claims on behalf of the City if three conditions occur:

> 1) the wrongful act occurs on or after the retroactive date of the policy, but before the end of the policy period;
>
> 2) the claim for the wrongful act is first made against the City during the policy period; and
>
> 3) the claim is reported to Lexington in writing during the policy period.

Satisfaction of all three conditions is required for coverage under the Lexington policy.[5] The City was undisputedly informed that Lexington's liability is limited by these terms.

Therefore, coverage under the Lexington policy was effective only if Gorman's claim was both made and reported within the applicable policy period. See **Livingston Parish School Board**, 282 So.2d at 481, *citing* 7 APPLEMAN, INSURANCE LAW AND PRACTICE (Supp.1972), § 4262. Under this type of policy, the risk of a claim incurred but not made, as well as a claim made but not reported, is shifted to the insured. See **Anderson**, 98-2157 at 7, 760 So.2d at 306 n.6, *citing* Bob Works, Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims-Made Formats as a Test Case, 5 Conn. L.J. 505, 546 (1999). "The purpose of the reporting requirement [in a claims-made policy] is to define the scope of coverage [purchased by the insured] by providing a certain date after which an insurer knows it is no longer liable under the policy." **Resolution Trust Corp. v. Ayo**, 31 F.3d 285, 289 (5th Cir. 1994) (applying Louisiana

---

[5] See **Hood**, 08-0215, 08-0237 at 18, 5 So.3d at 830 (addressing the "event that triggered policy coverage," that is, "a claim being first made and reported during the policy period); see also **Anderson**, 98-2157 at 6, 760 So.2d at 305, *quoting* Sol Kroll, The Professional Liability Policy "Claims Made," 13 Forum 842, 843 (1978) (addressing "the event and peril being insured"); 15 W. SHELBY MCKENZIE & H. ALSTON JOHNSON, INSURANCE LAW AND PRACTICE, LOUISIANA CIVIL LAW TREATISE, § 6.25 at 598-99 (4th ed. 2012).

law). Once the policy period and reporting period expire, the insurer can "close its books" on that policy. See *Id.*

Although the September 28, 2009 wrongful act occurred after April 17, 2005 and before April 17, 2011, and Gorman's September 27, 2010 claim was made between April 17, 2010 and April 17, 2011, as required, Gorman's claim was not reported to Lexington until September 22, 2011, which is after the policy period expired on April 17, 2011. The occurrence of only the first two of the policy's required conditions was insufficient to trigger coverage. Absent a timely reporting, one of the conditions needed to trigger coverage under the applicable Lexington policy did not occur. Therefore, the Lexington policy did not provide coverage to the City for the wrongful act alleged by Gorman.[6]

Because an insurer's ability to limit its liability and impose reasonable conditions on the obligations it assumes by its contract is restricted by statute and/or public policy,[7] Gorman urges that the application of the claims-made-and-reported provisions in the Lexington policy to her claim is against public policy and violates statutory law. Gorman's right to sue Lexington arises out of the Direct Action Statute, which provides that an injured person, at his or her option, "shall have a right of direct action against the insurer within the terms and limits of the policy." La. R.S. 22:1269(B)(1).[8] Louisiana R.S. 22:1269(D) further provides:

---

[6] As indicated, the lower courts agreed that the reporting provision in the Lexington policy was enforceable as between the two contracting parties (the City and Lexington). See **Gorman**, 12-1468 at 5. The City did not take a writ.

[7] See **Livingston Parish Sch. Bd.**, 282 So.2d at 481.

[8] Prior to the 2008 renumbering of the statutes in the Louisiana Insurance Code, the substance of La. R.S. 22:1269 was found in La. R.S. 22:655. See 2008 La. Acts 415, § 1, effective January 1, 2009. For consistency in references and to prevent confusion, this provision is referred to as La. R.S. 22:1269 in this opinion although prior decisions may have been based on La. R.S. 22:655.

7

It is also the intent of this Section that all liability policies **within their terms and limits** are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability the insured may have as or for a tortfeasor **within the terms and limits of the policy**. [Emphasis added.]

"The Direct Action Statute affords a victim the right to sue the insurer directly when a liability policy covers a certain risk." **Anderson**, 98-2157 at 9, 760 So.2d at 307. The Direct Action Statute "does not, however, extend the protection of the liability policy to risks that were not covered or were excluded by the policy (at least in the absence of some mandatory coverage provisions in other statutes)." ***Id.***

Limitations on an insurer's ability to contract are imposed by La. R.S. 22:868, which, in pertinent part, provides:[9]

B. **No insurance contract** delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state ... **shall contain any condition**, stipulation, or agreement **limiting [the] right of action against the insurer** ... **to a period of less than one year from the time when the cause of action accrues** in connection with all other insurances unless otherwise specifically provided in this Code.

C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract. [Emphasis added.]

The emphasized language in La. R.S. 22:868(B) prohibits Louisiana-issued policies from containing any provision that would limit a "right of action against [an] insurer ... to a period of less than one year."

Based on the protection statutorily afforded to the public, Gorman urges that La. R.S. 22:1269(B)(1) and 868(B) confer substantive rights to injured third parties,

---

[9] Prior to the 2008 renumbering, the substance of La. R.S. 22:868 was found in La. R.S. 22:629. See 2008 La. Acts 415, § 1, effective January 1, 2009. For consistency in references, this provision is referred to as La. R.S. 22:868 in this opinion.

which vest when the injury occurs. In **West v. Monroe Bakery**, 217 La. 189, 46 So.2d 122 (1950) (plurality opinion), which involved an occurrence policy,[10] this court recognized that the Direct Action Statute "expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public." *Id.* 46 So.2d at 129-30, *quoting* **Davies v. Consolidated Underwriters**, 199 La. 459, 6 So.2d 351, 357 (1942) (emphasis omitted). In so holding, this court observed:

> It is quite evident that, except in very rare cases, the party injured by the negligence of another has no knowledge as to whether or not that other is insured, and if he has ordinarily no knowledge as to whether there is any insurance at all, then, clearly, he has no knowledge as to who the insurer may be if there is one. It is therefore not within his power to give the notice as required by the policy, and, if notice is essential to his recovery, his right must, as we have stated, depend upon the other party. We do not think such was the intention of the legislators.

**West**, 46 So.2d at 126, *quoting* **Edwards v. Fidelity & Casualty Co.**, 123 So. 162, 163 (La.App. Orleans 1929). Thus, where a third person is not at fault in the insurer's failure to receive timely notice as required by an occurrence policy, the third party cannot be made liable for the insured's breaching of an agreement with an insurer. See **West**, 46 So.2d at 130.

The appellate courts are divided on the issue of whether this principle applies in the context of a claims-made-and-reported policy. In **Williams v. Lemaire**, 94-1465, p. 5 (La.App. 4 Cir. 5/16/95), 655 So.2d 765, 768, and **Murray**, 96-297 at 8, 686 So.2d at 50, the courts refused to distinguish between claims-made policies and occurrence policies in the application of this principle, finding that the enforcement of the reporting provision in claims-made policies also deprives injured third parties of their right of action under the Direct Action Statute. However, in

---

[10] An occurrence policy differs from the claims-made-and-reported policy at issue in this matter.

**Reichert v. Bertucci**, 94-1445 (La.App. 4 Cir. 1/31/95), 650 So.2d 821, 823, **Case v. Louisiana Medical Mut. Ins. Co.**, 624 So.2d 1285, 1289 (La.App. 3 Cir. 1993), and **Bank of Louisiana v. Mmahat**, 608 So.2d 218, 221 (La.App. 5 Cir. 1992), the courts declined to apply the principle of **West** in the context of claims-made policies, relying on this court's pronouncement in **Livingston Parish Sch. Bd.** that the limitation of liability in a claims-made policy is not per se invalid as against public policy.  See **Livingston Parish Sch. Bd.**, 282 So.2d at 481.

In **Livingston Parish Sch. Bd.**, 282 So.2d at 482-83, this court rejected the public policy attack made on a claims-made-and-reported policy in connection with an insured's claim;[11] however, this court did not resolve this issue in the context of an injured third party's claim.[12]  Later, in **Anderson**, when presented with the opportunity to address the issue, this court declined to do so because the injured third party's claim had been neither timely made nor reported to the insurer during the policy period as required by the policy.  See **Anderson**, 98-2157 at 8 n.7, 760 So.2d at 306 n.7.

Finally, this court considered the enforceability of a reporting provision in a claims-made policy against an injured third party in **Hood** where the patient's claim

---

[11]  This court in **Livingston Parish Sch. Bd.** reasoned:

> No reasonable expectation of coverage by the insured was defeated by the unambiguous provisions clearly limiting coverage to those claims made during the policy period.
>
> . . . .
>
> In effect, the insured received what he paid for by the present policy, with premiums presumably reduced to reflect the limited coverage.

***Id.***, 282 So.2d at 482-83.

[12]  The **Livingston Parish Sch. Bd.** court acknowledged that, in some non-renewal situations, enforcement of such a provision may be against public policy.  See ***Id.***, 282 So.2d at 481 n.4.

10

for medical malpractice had been neither first made against the doctor nor reported to the doctor's insurer during the policy period as required by the policy. Consideration of the public policy concerns was necessary in **Hood** because the claim had been both made and reported less than one year from the date of the acts giving rise to the patient's medical malpractice action.[13]  In resolving the issue of coverage under those circumstances, this court, in **Hood**, considered whether the public policy expressed by the Direct Action Statute would allow an insurer to deny a patient coverage where the doctor failed to properly report the claim to his insurer.  In reversing the appellate court's decision in favor of the injured third party,[14] this court recognized that the Direct Action Statute "grants a **procedural right of action** against an insurer where the plaintiff has a substantive cause of action against the insured."  **Hood**, 08-0215, 08-0237 at 17-18, 5 So.3d at 829 (emphasis added).

After examining the policy, the **Hood** court held that the provisions relating to the making and reporting of claims did "not limit plaintiff's right to bring his suit" against the insurer.  **Hood**, 08-0215, 08-0237 at 18, 5 So.3d at 829.  Rather, these provisions provided "the scope of coverage bargained for by [the insured]." *Id.*  The policy's denial of coverage to the insured for the injured third party's claim did not

---

[13]  In **Hood**, the medical treatment was provided from April through August of 2003, and the patient was discharged in September of 2003.  Suit was filed by the patient against the doctor on April 29, 2004, with the malpractice insurer being added as a defendant on February 15, 2005, in connection with a policy of insurance that was in effect from January 1, 2003 to January 1, 2004.  The doctor did not renew the policy and refused the insurer's offer of "'tail coverage' that would have insured him against claims that arose from medical incidents occurring during the policy period, but were first made and reported after that period."  **Hood**, 08-0215 at 2-3, 5 So.3d at 820-21.

[14]  The appellate court in **Hood** affirmed the trial court's denial of the insurer's motion for summary judgment on the issue of coverage, finding:

> [b]ecause the policy provision at issue in this case effectively reduced the prescriptive period for making a claim against [the insurer] to less than the statutorily-mandated period, the policy provision is in violation of the statutory law that prohibits the limiting of a right of action against an insurer to less than one year.

**Hood v. Cotter**, 06-1390, p. 8 (La.App. 1 Cir. 12/28/07), 978 So.2d 988, 994.

limit the injured third party's right of action, as La. R.S. 22:1269 "does not extend the protection of the liability policy to risks that were not covered by the policy unless another statute requires a mandatory coverage provision." **Hood**, 08-0215, 08-0237 at 18, 5 So.3d at 829-30. The court reasoned: "To hold otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured." **Id.**, 08-0215, 08-0237 at 18, 5 So.3d at 830. Because claims-made policies are not per se impermissible or against public policy,[15] this court declined to interpret La. R.S. 22:868 as prohibiting a provision that makes coverage dependent on a claim being first made and reported during a policy period.[16] **Id.** As in **Anderson**, the event that triggered policy coverage in **Hood** simply had not occurred during the applicable policy period. **Id.** Therefore, the enforcement of the policy provisions on the making and reporting of claims does not deprive an injured third party of a right of action under the Direct Action Statute.

Because this court, in **Hood**, considered the issue of whether the Direct Action Statute preserves an injured third party's claim against an insurer where the insured failed in his reporting obligation, Lexington is correct in its assertion that the appellate court in this case erred in disregarding the **Hood** decision. Relying on the fact that her claim, unlike that in **Hood**, was made during the applicable policy period as required by the Lexington policy, Gorman urges that **Hood** does not govern in this

---

[15] See **Anderson**, 98-2157 at 7, 760 So.2d at 306, *citing* **Livingston Parish Sch. Bd.**, 282 So.2d at 481.

[16] The **Hood** court explained that La. R.S. 22:868:

> [D]oes not mandate coverage, but prohibits any condition, stipulation or agreement in an insurance contract from limiting a right of action against the insurer to a period of less than one year from the time when the cause of action accrues, was not violated as the claims-made coverage provision did not impermissibly limit plaintiff's cause of action.

**Hood**, 08-0215, 08-0237 at 18-19, 5 So.3d at 830.

case. Although factually distinguishable, we find that the court's reasoning in **Hood** nevertheless applies in this case.[17]

Based on the holding in **Hood**, in the absence of coverage to the City, as discussed previously, Gorman was not deprived of her rights under the Direct Action Statute, as that statute does not extend any greater right to the injured third party who was damaged by the insured. See **First Am. Title Ins. Co. v. Titan Title, LLC**, 2011 WL 5854683 *2-3 (M.D. La. 2011) (citing **Hood** as "determinative"); **Vitto v. Davis**, 09-0498, p. 6 (La.App. 3 Cir. 11/4/09), 23 So.3d 1048, 1052 (relying on **Hood**). Any right that Gorman might have had under the Lexington policy did not vest at the time of her son's injury. To hold otherwise would effectively convert the City's claims-made-and-reported policy into an occurrence policy, resulting in the judicial modification of the bargained-for exchange between the insurer and insured.[18] We recognize that an injured third party rarely has knowledge of the identity of the insurer of the party responsible for an injury, making it nearly impossible for an injured third party to give notice to the insurer. Rather, the injured third party generally has to rely on the insured, which has an interest in ensuring the availability of the coverage it purchased, to comply with the reporting provision in its policy. Although we can contemplate no logical reason why the City would not report a claim for which it apparently purchased insurance coverage, we decline, under the facts of this case, to hold the insurer liable for the City's failure to report the claim as required

---

[17] In light of this court's holding in **Hood**, the appellate court's reliance on **Murray** and **Pittman** was improper.

[18] A variety of coverages is typically available to an insured. Presumably, premiums are calculated in accordance with the amount of protection undertaken by the insurer. See **Livingston**, 282 So.2d at 482-83. In effect, the City received what it paid for by the present policy, with premiums potentially adjusted to reflect the limited coverage.

by the Lexington policy. A contrary finding would, where there is no evidence of fraud or collusion, punish the insurer for the inactions of its insured.

At least in terms of an available funding source if Gorman prevails in her lawsuit, there is little doubt that Gorman has been prejudiced by the City's delay in answering discovery and revealing the identity of its insurer.[19] However, this court has previously considered and rejected arguments based on equity in this context. Although insurance policies "are executed for the benefit of all injured persons," such protection is limited by the "terms and limits of the policy." La. R.S. 22:1269(B)(1) & (D); **Hood**, 08-215, 08-237 at 18, 5 So.3d at 829. Louisiana R.S. 22:868 simply does not mandate coverage where none exists. See **Hood**, 08-0215, 08-0237 at 18-19, 5 So.3d at 830.

The existence of a subsequently-issued Lexington policy does not dictate a contrary result on the issue of coverage. Despite the similarities between the April 17, 2010-April 17, 2011 policy and the April 17, 2011-April 17, 1202 policy, there is one very important difference–the defined policy period. The policy in effect for the period of April 17, 2011, to April 17, 2012 (during which period the claim was reported to Lexington) did not extend the policy period for the policy that was in effect from April 17, 2010, to April 17, 2011. A judicial expansion of policy coverage would circumvent the insurance contract that was mutually entered into by the parties and create insurance protection where none existed. See **Resolution Trust Corp.**, 31 F.3d at 292. Coverage under each policy here requires "[a] claim for a

---

[19] Even though payment of a resulting judgment, if any, by the City is discretionary in that an appropriation would be required and the City's assets cannot be seized to satisfy a judgment, we are not free to modify the terms of the policy that were bargained for by the City and Lexington. See La. Const. art. XII, § 10(C) (governing the effects of judgments, the seizure of public property and public funds, and the payment of judgments); La. R.S. 13:5109(B)(2) (governing the payment of a judgment rendered against a political subdivision); **Peterson**, 98-1712 at 5, 729 So.2d at 1029 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.").

14

wrongful act shall be first made against the Insured and reported to us in writing during the policy period." The plain terms of the policies must be enforced. <u>See</u> La. C.C. art. 2046; **Peterson**, 98-1712 at 4-5, 729 So.2d at 1028. Clearly, the policy required that the claim be first made and reported in the same policy period for there to be coverage.

## CONCLUSION

The provisions of the Lexington policy are undisputedly clear and unambiguous. Provisions on the making and reporting of claims in a claims-made-and-reported policy are not per se impermissible as against public policy. Under the City's policy, the event and peril insured against is based on making and reporting of the claim within the period specified by the policy. The City's failure to report Gorman's claim to Lexington during the applicable policy period as required precludes coverage. Absent coverage, Gorman was not deprived of a right under the Direct Action Statute. Therefore, the trial court correctly granted summary judgment in favor of Lexington as to the City and Gorman, and the appellate court erred in reversing summary judgment relative to Gorman.

## DECREE

That portion of the decision of the appellate court that reversed the trial court's grant of summary judgment in favor of Lexington as to Gorman is reversed, and the trial court's judgment in this regard is reinstated. The matter is remanded to the trial court for further proceedings.

**REVERSED IN PART; JUDGMENT REINSTATED IN PART; REMANDED TO THE TRIAL COURT.**

15

SUPREME COURT OF LOUISIANA

NO. 2013-C-1734

JOYCE GORMAN

VERSUS

CITY OF OPELOUSAS, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF ST. LANDRY


JOHNSON, C.J., dissents for the reasons assigned by Knoll, J.

## SUPREME COURT OF LOUISIANA

## NO. 2013-C-1734

## JOYCE GORMAN

## VERSUS

## CITY OF OPELOUSAS, ET AL.

**KNOLL, Justice, dissenting.**

In this matter, we are presented with the issue left unanswered in *Anderson v. Ichinose*, 98-2157, n.7 (La. 9/8/99), 760 So.2d 302, 306, n.7, of "whether a claims-made insurer may raise, in an action by the victim of the insured's tort, the defense of a non-prejudicial failure of the timely notified insured to give notice to the insurer during the policy period."  Because I disagree with the legal resolution of this issue by the majority, I respectfully dissent.

In *Anderson*, with Justice Lemmon as organ for the court, we held claims-made policies do not violate public policy in a situation where the claim was neither timely made nor reported to the insurer.  We, however, left open the question of whether a third party victim, who is denied coverage under a claims-made policy because the timely notified insured failed to notify the insurer timely, may resort to the public policy provisions of the Direct Action statute to obtain coverage.  The majority herein holds the Direct Action statute affords a victim the right to sue the insurer directly when a liability policy covers a certain risk, but does not extend the protection to risks not covered or excluded by the policy.  Accordingly, because the Lexington policy only covered claims made and reported within the policy period, the majority finds the Direct Action statute does not

mandate coverage where none exists and, thus, confers no cause of action on Gorman. This reasoning, in my view, is in error.

As the majority noted, the Direct Action statute provides "[t]he injured person or his survivors or heirs … shall have a right of direct action against the insurer within the terms and limits of the policy." La. Rev. Stat. § 22:1269(B)(1). The statute further provides:

> C. It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.
> D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable….

La. Rev. Stat. § 22:1269.

The majority focuses heavily upon the phrase "the terms and limits of the policy" in its analysis without first examining the legality of those very terms and limits under our law. In *Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins. Co.*, 282 So.2d 478 (La. 1973), this Court explained: "in the absence of conflict with a statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract." 282 So.2d at 481. It logically follows, when a liability policy or contract, which is executed for the benefit of all injured persons, contains terms and conditions in violation of the laws of this state, including those enacted for the protection of the public interest, then the action brought by the injured party is neither subject to those conditions nor to the defenses arising there under. *See* La. Civ. Code art. 7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest."). In my view, the notice requirement herein conflicts with the policy and

2

intent of the Direct Action statute and effectively restricts the vested rights of injured parties by allowing coverage to be defeated in an otherwise timely and valid claim when an insured without good cause blatantly fails to give notice.

At its most basic, the direct action is an application of the principle of contract law that a third-party beneficiary may sue to enforce a contract made for his benefit even though not himself a party to the agreement—a *quasi* stipulation *pour autrui*. William Shelby McKenzie and H. Alston Johnson, III, 15 *La. Civ. L. Treatise, Insurance Law & Practice* § 2:6 (4th ed.). It was initially enacted to insure the payment of judgments arising out of an injury caused by an insured, who, due to insolvency or bankruptcy, could not pay, but had contracted for liability insurance covering the tort action. *Id.* at § 2:2. It has since evolved into a true right of direct action, and one of its most distinctive characteristics is how by its language and its judicial interpretations it "almost entirely remove[s] the insurance contract from governance by the established principles of contract law. The contract becomes one infused with important public policy concerns, and candidly described as written for the benefit of a non-party: the person injured by the blameworthy conduct of one of the contracting parties." *Id.* at § 2:6. This concept is nowhere more evident than in the interpretation of the language of the statute granting a direct action to the injured person "within the terms and limits of the policy."

This phrase upon which the majority herein so heavily relies has been present in the statute since its inception in 1918.[1] However, unlike the majority, our courts have since even then found:

---

[1] In Act 253 of 1918, the Legislature made it a misdemeanor for a company to issue any policy "against liability unless it contains a provision … that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy." *See* McKenzie & Johnson, *supra* § 2:2 (quoting 1918 La. Acts 253). "In such a case, *i.e.*, the insolvency of the insured, 'an action may be maintained

3

the words "terms and limits of the policy" were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was *within the power of plaintiff to comply*.

*Edwards v. Fidelity & Cas. Co. of New York*, 11 La. App. 176, 178, 123 So. 162, 163 (Orleans 1929)(emphasis added). In *West v. Monroe Bakery*, 217 La. 189, 46 So.2d 122 (1950), this Court squarely faced the interpretation of this phrase and concluded:

It is illogical to construe "terms and limits of the policy" to mean one thing in one section of [the Direct Action statute](the same section that existed in Act 253 of 1918) and another entirely different thing in a later section, when all the sections relate to the same subject-the responsibility of a liability insurer to those who sustain injury for which the assured shall be found liable. Hence, what was said in the *Edwards* case as to the effect of "terms and limits of the policy" is equally applicable to the present set of circumstances.

217 La. at. 202, 46 So.2d at 127.

The *West* court also explained our jurisprudence consistently upheld the statutorily granted right against the insurer "regardless of a stipulation to the contrary between the insurer and the insured in the policy contract and regardless of dilatory conduct on the insured's part in giving notice." *Id.* at 191, 46 So.2d at 123. I agree with this long-standing jurisprudence and find the majority's statement that "[a]ny right that Gorman might have had under the Lexington policy did not vest at the time of her son's injury," Slip Op. at 13, is a legally erroneous statement. A tort victim's rights do not go in and out of vestment. Her substantive cause of action against the insured vested upon her son's death. Whether her action was covered under the policy and whether she can proceed against Lexington is another matter.

---

within the terms and limits of the policy by the injured person or his or her heirs, against the insurer.'" *Id.*

4

Clearly, the Direct Action statute grants Gorman a right of action against the insurer "within the terms and limits of the policy." This is a "CLAIMS MADE" policy, in which "COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO US WHILE THE COVERAGE IS IN FORCE":

> We shall pay those amounts that the Insured becomes legally obligated to pay to compensate others for bodily injury, property damage, or personal injury arising out of the Insured's wrongful act. The wrongful act shall take place on or after the retroactive date, but before the end of the policy period, and shall arise solely in your capacity as a law enforcement agency. A claim for a wrongful act shall be first made against the Insured and reported to us in writing during the policy period or any extended reporting period we provide under this policy.

*See* Slip Op. at 2-3.

It is undisputed the date of the wrongful act fell within the policy period, the act arose solely in the insured's capacity as a law enforcement agency, and Gorman timely made the claim against the insured within that same policy period in accordance with the terms and limits of the policy. At that time, her right of direct action was fully conferred. Although the majority reads the reporting requirement as a term of the contract, this requirement is for all intents and purposes a notice requirement and, as such, does not fall within the "terms and limits of the policy" as historically defined by this Court. *See West*, 217 La. at 191, 46 So.2d at 123; *see also Edwards*, 11 La. App. at 178, 123 So. at 163. While the failure to notify can be invoked against the insured, its failure to notify the insurer—a condition over which Gorman had no control—cannot take away the vested right of a third-party beneficiary who did all within her power to preserve her rights. Therefore, I find our Direct Action statute confers a right of action in Gorman against Lexington for the tragic death of her son and agree with the court of appeal the notice provision could not be used as a coverage defense against a

5

third party victim who had no knowledge of the provision and who had taken steps to pursue her legal remedies. *See Gorman v. City of Opelousas*, 12-1468, p. 3 (La. App. 3 Cir. 5/1/13)(unpub'd)(quoting *Pittman v. Nutmeg Ins. Co.*, 97-524, p. 5 (La. App. 3 Cir. 3/6/98), 708 So.2d 832, 834).

Nevertheless, even if the reporting requirement would somehow be constituted as a term or limit of the policy contractually negotiated by the parties, I still would recognize Gorman's direct action against Lexington because in my view the notice requirement derogates from the public policy behind our Direct Action statute. As previously stated, the statute was enacted from its inception to protect tort victims from insolvent tortfeasors by extending to them the insurance for which said tortfeasor contracted. McKenzie & Johnson, *supra*, §2:2. Given the payment of a judgment by the City is discretionary, *see* La. Const. art. XII, §10(C) and La. Rev. Stat. 13:5109(B)(2),[2] Gorman is essentially facing an insolvent insured and should be granted the benefit the City contracted for—coverage for liability for wrongful acts committed and subsequent claims made during the policy period—as she properly took all the necessary steps to preserve and pursue the legal remedies afforded to her by the Legislature in our Direct Action statute.

---

[2] As we explained in *Newman Marchive Partnership, Inc. v. City of Shreveport*, 07-1890 (La 4/8/08), 979 So.2d 1262,

> … the constitution delegated to the legislature the power to determine how money judgments rendered against the state would be executed. La. Const. art XII, § 10(C). The legislature acted on this authority when it passed LSA-R.S. 13:5109(B)(2), stating, "[a]ny judgment rendered in any suit filed against ... a political subdivision ... shall be exigible, payable, and paid only ... out of *funds appropriated for* **that purpose** by the named political subdivision ...." (Emphasis added).… LSA-R.S. 13:5109(B)(2) envisions that whenever a judgment is rendered against the state, a state agency, or a political subdivision of the state, the judgment is payable only out of funds appropriated "for that purpose," *i.e.* money set aside specifically to satisfy a particular judgment. *Id.* This is in accord with what we previously stated in *Hoag* [*v. State*, 2004-0857 (La.12/1/04), 889 So.2d 1019], that "La. R.S. 13:5109(B) is a clear expression of legislative intent; judgments rendered against the state are payable only by *specific* appropriation by the legislature." 2004-0857, p. 5, 889 So.2d at 1023 (emphasis added).

07-1890 at pp. 6-7, 979 So.2d at 1267 (emphasis in original).

In *West*, this Court explained:

> It is quite true that [insured's] failure to give notice to his insurer would have prevented his recovery from the insurer, had he himself paid the judgment * * * but that is because [the insured] had so contracted. As between parties to a contract, the contract itself is the law of the case. Here, however, the law of the case is not found solely within the four corners of the policy of insurance, but is contained primarily in the statute to which we have referred.
>
> ….
>
> We are told that it works a hardship on the insurer to be called on to defend an action of this kind, as he has had no prior knowledge of the accident and is not in a position to make a defense. *As to the hardship and disadvantage under which the insurer labors, and the difficulty under which the injured party finds himself we think that the ends of the justice require that the benefit of the doubt should be given to the injured party, who is in no way at fault, and whose loss was caused entirely by some one else, as against the insurer who has entered into the contract with full knowledge of the statute and for a monetary consideration.*

217 La. at 126, 46 So.2d at 198-200 (quoting *Edwards v. Fidelity & Cas. Co. of New York*, 11 La. App. 176, 123 So. 162 (Orleans 1929))(Italics in original). The Court then concluded:

> As indicated in the reasoning of the *Edwards* case, the injured party might be deprived entirely of the benefits granted him by [the Direct Action statute] were the Courts to hold that any and every failure of the insured, after the accident, to comply with every exacting requirement of the policy would defeat recovery by the injured party. For instance, the insurance company might put a condition in the policy that telegraphic notice of an accident must be given to its home office within twenty-four hours of its occurrence and in the event of failure to give such notice, the policy protection would not cover the accident. The policyholder, being in possession of the policy, would at least have the opportunity of finding out that such a telegram was necessary and protect his rights, but the injured party, after the accident, is often in the hospital, or if less fortunate, he may have lost his life, and he or his heirs may be some days or weeks becoming familiar with the full facts surrounding his injury. The injured party or his heirs have no copy of the contract of insurance and may not even know for many weeks that such a policy was in existence, much less what its terms and conditions require.
>
> …. *The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public.* Frequently the insured is financially irresponsible and the only recourse of a person injured by the negligence of the insured is against

his insurance carrier. But rarely has the injured party knowledge as to who may be the insurer of the party responsible for his injuries. It is therefore not within his power to give a notice as required by the policy and the enforcement of a policy provision requiring notice to be given by the insured automatically and without any action on his part deprives him of the right of action granted by law. It is not desirable that he should be divested of such action, and that result should not obtain except in a very clear case. This is not such a case. By maintaining plaintiffs' action, the defendant company is not deprived of any substantial right. *Its liability remains contingent and is dependent upon proof of the negligence of* [the insured], *the driver of the automobile.*"

*Id.* at 129-30, 46 at 208-10 (quoting *West v. Monroe Bakery*, 39 So.2d 620 (La. App. 2d Cir. 1949)(Kennon, J., dissenting))(Italics in original).

While much could be made of the fact the policies in both *West* and *Edwards* upon which it relied were occurrence policies, I "see no meaningful distinction between the loss of rights suffered by an injured third party for failure to give notice under an occurrence policy and the loss of rights suffered by an insured third party for failure to give notice under a 'claims made' policy." *Murray v. City of Bunkie*, 96-297, p. 8 (La. App. 3 Cir. 11/6/96), 686 So.2d 45, 50, *writ denied*, 97-0514 (La. 5/9/97), 693 So.2d 767. In both instances, injured third parties become vested with rights under our Direct Action statute, and in both instances, the enforcement of the notice provisions would deprive injured third parties of their rights under the Direct Action statute when it was not within their power to give notice. Such a divestment is in direct derogation of our law and the policy and intention of the Legislature in granting the direct action. *See* La. Rev. Stat. § 12:1269(C); La. Civ. Code art. 7.

Significantly, our Legislature explicitly prohibits insurance contracts from containing "any condition, stipulation, or agreement limiting [the] right of action against the insurer … to a period of less than one year from the time when the cause of action accrues…." La. Rev. Stat. § 22:868(B). By restricting the

8

contractual freedom of the parties, the Legislature thus ensures the protection afforded by our rules of prescription. The provision in the Direct Action statute prohibiting compliance with terms and limits "in violation of the laws of this State" likewise restricts the ability of the contracting parties to limit the tort victim's right of action against the insurer. Here, the notice requirement coupled with the insured's blatant and unjustified failure to provide notice would not only limit, but effectively destroy the tort victim's right of action in an otherwise timely filed suit, and as such, it should be void as against the public policy provisions of our Direct Action statute. *See* La. Civ. Code art. 7 ("any act in derogation of such laws [enacted for the protection of the public interest] is an absolute nullity"); *see also*, La. Rev. Stat. § 22:868(C)("any such condition … shall be void").

Accordingly, I would find the contractual notice provision cannot be used to deprive the injured third party of her vested rights under the Direct Action statute and affirm the judgment of the Court of Appeal.

SUPREME COURT OF LOUISIANA

No. 2013-C-1734

JOYCE GORMAN

versus

CITY OF OPELOUSAS, ET AL

ON WRIT OF REVIEW TO THE COURT OF APPEAL,
THIRD CIRCUIT,
PARISH OF ST. LANDRY

**HUGHES, J., dissenting.**

I respectfully dissent for the reasons assigned by Justice Knoll.

1